Filed 5/22/13  In re A.T. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.T. et al.,<br><br>Defendants and Appellants. | E057084<br><br>(Super.Ct.No. RIJ120430)<br><br>**OPINION** |

APPEAL from the Superior Court of  Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant T.T.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant S.C.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

T.T. (the father) and S.C. (the mother) appeal from an order terminating parental rights to their daughter, A.T. (sometimes the child), who is now four years old. The father contends that the Department of Public Social Services (the Department) failed to give him due notice of the proceedings and failed to carry out a reasonably diligent search for him. The mother joins in the father's arguments.

Parental rights were not terminated until 10 months after the father — having become aware of the proceedings somehow — appeared and received appointed counsel. His counsel told the juvenile court that she was considering asserting lack of notice. Nevertheless, she did not actually raise this issue, and she did not object to termination of parental rights on this ground. We therefore conclude that it has been forfeited.

I

FACTUAL AND PROCEDURAL BACKGROUND

The mother, her daughter A.T., and her son D.J. lived with the mother's eight siblings and their mother (the maternal grandmother) in Moreno Valley.

In September 2010, the mother went to Las Vegas, taking D.J. (who was then four months old) with her, but leaving behind A.T. (who was then almost two years old) with the maternal grandmother. While the mother was gone, the police executed a search

2

warrant at the home, based on information that one of the mother's siblings was selling drugs.[1]

As a result of the raid, it was discovered that the water to the home had been shut off, perhaps as much as three weeks earlier, due to nonpayment of the bill. The toilets were not working. There was no water to wash or cook with. Also, the refrigerator was not working, and the food inside was spoiled.

Some of the minor siblings reported that the adult siblings "physically fight sometimes." They also reported that the mother smoked marijuana.

The maternal grandmother was arrested on an outstanding misdemeanor warrant; as a result, she was no longer able to care for A.T. A.T. was detained and placed outside the home.

The next day, the mother phoned the social worker. She identified the father as A.T.'s biological father.[2] Apparently she provided his birth date. According to the social worker, however, she "was not able to provide enough information on the father[] for the Department to submit a Parent or Prison Locator."

The Department then filed a dependency petition concerning A.T. and D.J.

---

[1] The father claims that no drugs were actually found. That is not entirely clear. The social worker's report does not say whether drugs were found or not, but it does say that the sibling suspected of selling drugs was arrested.

[2] Actually, the mother identified the father as the biological father of both children. The maternal grandmother, however, identified a different man as D.J.'s biological father. Paternity tests eventually confirmed that the father was the biological father of A.T. but not of D.J. Thus, D.J. is not a party to this appeal.

The mother returned from Las Vegas with D.J. in time to appear at the detention hearing. D.J. was detained and placed along with A.T.

In November 2010, the social worker asked the mother once again about the father. The mother said that, when she told him that she was pregnant with D.J., he "left," and she had not heard from him since. She denied knowing his current whereabouts. She stated that he had not provided any support for the children.

The social worker also asked the maternal grandmother about the father. She said that she did not know his whereabouts. The social worker checked with the local jails but found no records regarding the father. The social worker did not do anything else to find the father; she did not check Department of Motor Vehicle records, telephone directories, child support records, welfare records, or prison records.[3]

In November 2010, at the jurisdictional/dispositional hearing, the father was not present. The juvenile court found that notice had been given as required by law. It declared the children dependents based on failure to protect (Welf. & Inst. Code, § 300, subd. (b)) and, as to their alleged fathers only, failure to support (*id.*, subd. (g)). It formally removed them from their parents' custody. The juvenile court denied reunification services for the father on the ground that his whereabouts were unknown. (Welf. & Inst. Code, § 361.5, subd. (b)(1).)

---

**3** The detention report mentions a "paternal aunt" who was being considered for placement. Apparently, however, this was a mistake, and the person named was actually a relative of the maternal grandmother's ex-boyfriend.

4

Sometime in or before May 2011, the social worker learned (apparently from the mother) that the father was living in Moreno Valley.**4** The mother claimed that she was in contact with him and that she had told him to call the social worker. However, he had not done so.

In May 2011, at the six-month review hearing, the father was not present. The juvenile court once again found that notice had been given as required by law.

In July 2011, the social worker asked that the paternal grandmother in Riverside be evaluated as a possible placement. The social worker misidentified her as a paternal aunt and did not explain how she was located.

In September 2011, the mother was arrested and incarcerated for aggravated assault.

In November 2011, at the 12-month review hearing, the father was personally present in court for the first time. Counsel was appointed for him.

The father's counsel requested a continuance so that she could familiarize herself with the case. However, she indicated that, after doing so, she would probably be filing a petition under Welfare and Institutions Code section 388 (section 388) requesting reunification services for the father. The juvenile court indicated that, if she did file a

---

**4** An interesting but cryptic note in the "Delivered Service Log" states that in January 2011, "The family had a visit . . . at the CPS office in Moreno Valley," and it lists the father as a "[p]articipant."

5

section 388 petition, it would set it for hearing on the same day as the continued 12-month review hearing.

The father's counsel also requested visitation for him. She stated, "He has been having visits. It's not noted in the social worker's report, but he has been." The father confirmed this, stating, "I have been at every visit until [the mother] was incarcerated." The court allowed him to have weekly visitation.

A social worker's report dated May 2012 stated that the father had not requested any visits since November 2011. Inconsistently, however, it also noted that he had had at least one visit in December 2011.

In January 2012, at the continued 12-month review hearing, the juvenile court terminated the mother's reunification services and set a Welfare and Institutions Code section 366.26 (section 366.26) hearing. The Department indicated that it was still recommending setting a section 366.26 hearing because "[t]he father . . . has come forward a little too late and the kids have been in the system over a year before he has come forward to state that he may be the father of the child." The father's counsel had not filed a section 388 petition and did not object.

In March 2012, the mother was convicted of aggravated assault and sentenced to five years in prison.

In September 2012, at the section 366.26 hearing, the father's counsel stated: "As you can see the children know their father . . . . He has always been there for both the

6

children.  He was never given services because he wasn't present at the current detention hearing.

"However, during that period of time, he always visited.  The social worker always knew that he was visiting and was part of these children's lives.  So we're asking at this time that the recommendation not be followed; that perhaps legal guardianship would be the better solution due to the fact that there is a bond between father and the children.

"Father is attempting to get into parenting classes.  He has his own place, and he would really like a chance down the road to be a part of the lives of his children."

The father's counsel still had not filed a section 388 petition.  She did not argue that the father had not been given proper notice of any of the proceedings, and she did not argue that he had been improperly denied reunification services.

The juvenile court found that the children were adoptable and that there was no applicable exception to termination.  It therefore terminated parental rights.

II

THE FATHER FORFEITED THE CLAIMED LACK OF NOTICE

The father contends that the proceedings at the jurisdictional/dispositional and six-month review hearings violated due process because the Department had not carried out a reasonably diligent search for him.

7

The Department does not even attempt to argue that it did make a reasonably diligent search. However, it does argue that the father forfeited any defect in the notice given him by failing to raise the issue below. We agree.

"'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings. [Citations.]' [Citation.]" (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.)

"[A] party waives all jurisdictional objections to a proceeding, including lack of notice, by opposing or resisting the proceeding on its merits. [Citations.]" (*In re Gilberto M*. (1992) 6 Cal.App.4th 1194, 1199.) Even a lack of notice that would otherwise be a due process violation can be forfeited by failure to raise it below, as long there has been an opportunity to do so. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060; *In re Cynthia C*. (1997) 58 Cal.App.4th 1479, 1491.)

The waiver rule need not be applied when it would be "fundamentally unfair." (*In re A.C.* (2008) 166 Cal.App.4th 146, 156.) However, that is hardly the case here. As soon as the father did appear, he was given appointed counsel. His counsel could have filed a section 388 petition seeking to obtain reunification services for him; indeed, she indicated that she was considering doing so, but she evidently decided not to.[5]

---

[5]     The father is not asserting ineffective assistance of counsel.

8

The father argues that we should not apply the waiver rule because he was not represented by counsel "when the notice errors were made . . . ." This conveniently ignores the fact that he *was* represented by counsel *after* the claimed errors occurred and that his counsel had some 10 months in which to raise these errors, by way of a section 388 petition or otherwise, before parental rights were ultimately terminated.

The father also argues that filing a section 388 petition would have been futile because, even if there was a due process violation, the juvenile court could not have granted the petition unless it also found that extending the reunification period would be in the best interest of the child. He cites *In re Justice P*. (2004) 123 Cal.App.4th 181. There, however, the appellate court rejected the father's due process claim not only because he failed to show that extending the reunification period would be in the best interest of the child (*id*. at pp. 188-192), but also because it found that the asserted due process violation was harmless beyond a reasonable doubt; the father was incarcerated, and he was not scheduled to be released until more than a year after the statutory maximum reunification period ended (*id*. at pp. 192-193). Here, by contrast, the father claims that the due process violation was prejudicial. There is no reason to suppose that the juvenile court would not have entertained this claim under section 388.

In any event, we need not decide whether a section 388 petition was the proper procedural vehicle for the father's due process claim. We are convinced that the father could still have raised his due process claim in *some* form — it was not too late. (See *In re B.G.* (1974) 11 Cal.3d 679, 688-689 [before depriving a parent of the companionship,

9

care, custody, and management of his children, the state must afford him or her adequate notice and an opportunity to be heard].) Given the exigencies of dependency proceedings, it would be absurd to suppose that the father had no remedy *before* parental rights were terminated and that his only remedy comes *later*, on appeal. Quite the contrary — the onus was on him to raise his due process claim below at the earliest possible opportunity.

As the Department notes, *In re P.A.* (2007) 155 Cal.App.4th 1197 is squarely on point. There, the social services agency had not completed a declaration of due diligence for the father. (*Id*. at pp. 1200-1201.) Nevertheless, at the jurisdictional/dispositional hearing, the juvenile court denied reunification services for the father on the ground that his whereabouts were unknown. (*Id*. at p. 1201.) After the juvenile court set a section 366.26 hearing (*P.A.*, at p. 1201), the father appeared. (*Id*. at p. 1202.) His counsel indicated that he was going to file a section 388 petition but never did. (*P.A.*, at pp. 1202, 1206.) At the section 366.26 hearing, his counsel objected to termination of parental rights, but not based on lack of notice. (*P.A.*, at p. 1207.)

On appeal, the father argued that the juvenile court had erred by denying reunification services in the absence of a completed declaration of due diligence. (*In re P.A.*, *supra*, 155 Cal.App.4th at p. 1207.) He also argued that the failure to give him notice of the jurisdictional/dispositional hearing violated due process. (*Id*. at p. 1208.) The appellate court held: "Because defective notice and the consequences flowing from

10

it may easily be corrected if promptly raised in the juvenile court, [the father] has forfeited the right to raise these issues on appeal. [Citations.]" (*Id*. at pp. 1209-1210.)

The father also argued that "the waiver rule is not enforced when it conflicts with due process . . . ." (*In re P.A.*, *supra*, 155 Cal.App.4th at p. 1210.) The appellate court responded: "Here, [the father]'s persistent avoidance of responsibility for [the child] and his failure to seek any relief in the juvenile court persuades us the forfeiture rule is appropriately applied in this case. To remand the matter now to permit [the father] to file a section 388 petition he previously declined to file would achieve no purpose other than to delay permanence for [the child], a result we cannot countenance on this record." (*Ibid*.) The identical reasoning applies here.

We conclude that, even if the juvenile court and the Department erred by not ensuring that there was a more diligent search for the father, the error is not grounds for reversal.

III

THE FATHER FORFEITED THE CONTENTION THAT THERE WAS

INSUFFICIENT EVIDENCE THAT HIS WHEREABOUTS WERE UNKNOWN

The father also contends that there was insufficient evidence that his whereabouts were unknown to support the order denying him reunification services and hence insufficient evidence to support termination of parental rights.

This is really the same argument that we already rejected in part II, *ante*, dressed up in the guise of insufficiency of the evidence in the hope of avoiding forfeiture. This effort fails.

At the jurisdictional/dispositional hearing, before the juvenile court could deny the father reunification services, it had to find that his whereabouts were unknown. (Welf. & Inst. Code, § 361.5, subd. (b)(1).) However, it is too late to challenge the sufficiency of the evidence to support that finding. "'"An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed."' [Citation.] '[A]n unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.' [Citation.]" (*In re Liliana S*. (2004) 115 Cal.App.4th 585, 589.) "Such a limitation is necessary to promote finality and expedition of decisions concerning children and their interests in securing stable homes. [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259.)

We recognize that this rule cannot be enforced when it conflicts with due process. (*In re M.F.* (2008) 161 Cal.App.4th 673, 682.) "Relaxation of the . . . rule is appropriate when an error 'fundamentally undermine[s] the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole.' [Citation.]" (*Ibid*.) The father, however, we repeat (see part II, *ante*), had ample means (including appointed counsel) and ample opportunity to challenge the order

12

denying reunification services below.  He was afforded the necessary protections; he simply failed to avail himself of them.

Finally, at the section 366.26 hearing, the juvenile court merely had to find that it had *previously* denied reunification services on the ground that the father's whereabouts were unknown.  (Welf. & Inst. Code, § 366.26, subd. (c)(1).)  There was plainly sufficient evidence of this.

## IV

## DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
                                                                        Acting P. J.

We concur:


KING_____
                        J.


MILLER_____
                        J.